IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| STUDENTS ENGAGED IN ADVANCING TEXAS, M.F., by and through next friend, VANESSA FERNANDEZ, AMPERSAND GROUP LLC, and BRANDON CLOSSON,<br><br>                      *Plaintiffs*,<br>v.<br><br>KEN PAXTON, in his official capacity as the Texas Attorney General,<br><br>                      *Defendant*. | Civil Action No. 1:24-cv-00945-RP |

**DECLARATION OF CAMERON SAMUELS IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION**

I, Cameron Samuels, declare as follows:

      1.      I am the Executive Director of Students Engaged in Advancing Texas ("SEAT"), a coalition of Texas students from middle-school to college who seek to increase youth visibility and participation in policymaking. SEAT provides students with hands-on opportunities for engaging in advocacy, legislative efforts, and education on issues of importance to youths—thereby driving civic transformation and bettering Texas communities.

      2.      SEAT is actively engaged in state and local politics in Texas. SEAT's members regularly testify at school board meetings and state legislative sessions regarding a variety of issues, including school choice initiatives, protecting LGBTQ+ youth, and safeguarding students' rights to free speech and expression at school. SEAT encourages and prepares students to take ownership of their education, lives, and political activities to prepare them for informed and engaged citizenship, and empower them to make change in their communities. SEAT also educates students about their First Amendment rights.

3. In addition to its in-person political activities, SEAT maintains social media platforms to connect students in Texas and throughout the United States around the common goals of protecting students' rights. Specifically, SEAT maintains social media accounts on Facebook, X, LinkedIn, and most importantly, Instagram, where SEAT has amassed a community of over 2,200 followers.

4. Just in the last 30 days, 20.7% of SEAT's Instagram reach was comprised of users aged 13-17. In fact, SEAT often receives direct messages from minors on Instagram, including, for example, minor school leaders seeking information about attending SEAT-hosted rallies in support of transgender students and other social advocacy activities.

5. SEAT's members and organizers also use Slack to communicate internally and coordinate advocacy efforts, and nearly 50% of the members of this Slack community are minors.

6. The Securing Children Online Through Parental Empowerment Act, 2023 Tex. Sess. Law Serv. Ch. 795 (the "Act") may have significant effects on SEAT's ability to reach students and accomplish its mission. Because the Act will require the social media platforms that SEAT uses to prevent minors from viewing certain categories of content, SEAT would be unable to discuss via social media important topics such as bullying and resulting suicides, sex education, and other issues that the State of Texas may wrongly interpret as pornographic or promoting "grooming." I understand that social media platforms have said they would have to block such content to comply with the Act.

7. For example, on June 5, 2024, SEAT used its Instagram account to advocate for the Sammy Teusch Bullying Intervention and Prevention Act—authored by a SEAT organizer who is a minor—following the tragic suicide of fourth grade student Sammy Teusch, who took his life after experiencing relentless school bullying. Below is a true and correct screenshot of this

Instagram post, which I believe Texas minors would no longer be able to view if the Act takes effect:



8.      SEAT also advocated in favor of HB 1945, which protected resources for students regarding topics prohibited by the Act, including human trafficking, sexual assault, and suicide. Below is a true and correct screenshot of this March 16, 2023 Instagram post, which I believe Texas minors would no longer be able to view if the Act takes effect:



9.      Because the Act requires digital service providers like Instagram to use web-filtering to enforce the blocking of materials in the identified categories, there is a likelihood that these posts would be blocked to Texas minors. For example, if Instagram complied with the web-filtering requirement by banning all posts that include the words "suicide," "human trafficking," "sexual assault," "domestic violence," and "bullying," then the two posts above would be censored. Such an outcome would prevent young people and students from receiving important information about the policies and laws that directly impact their school experiences and education.

10.     SEAT also frequently opposes book bans over topics that include the censored categories at issue here. For example, in 2023, SEAT opposed Texas HB 900, which sought to ban "sexually explicit" and "sexually relevant" material from school libraries—painting classic novels and queer stories as "pornographic" and even amounting to child pornography if they alluded to romance between minors. SEAT used social media to mobilize opposition to this ban and has similarly done so with numerous other book bans. Under the Act, such posts would likely

4

be blocked to Texas minors (the most important audience of these posts)—as they could trigger web-filters related to "pornography" or "grooming."

11. Indeed, while the Act does not define "grooming," this term has historically been inappropriately enforced against the LGBTQ+ community—many of whom comprise SEAT's audience. This vague term could apply to block some of SEAT's social media posts regarding positive sex education and gender-affirming care.

12. The Act's age verification requirement also negatively affects SEAT's members and students all over Texas. This requirement may force students to provide personally identifying information and/or biometric data, creating a risk that their browsing activity is associated with their names and identification cards. Not only is this a violation of privacy, but has a chilling effect on the kinds of content teens will seek out or consume, and could deter students from browsing freely for fear that their online activity will follow them or even prevent them from accessing future educational or employment opportunities. Many of SEAT's members may choose to forgo access to these digital service providers entirely rather than submit to an invasive age-verification process.

13. The Act also bans minors from receiving targeted advertisements and advertisements that "facilitate, promote, or offer a product, service, or activity that is unlawful for a minor in this state to use or engage in." These restrictions are troubling because they could prevent SEAT members from receiving advertisements over social media about campaigns to decriminalize certain activity that we do not believe should be criminalized—such as reading banned books or participating in a drag queen read-aloud in a school library.

14. The Act threatens the ability of minors and students to engage politically and take an active role in the policy and political decisions in which they have a direct stake, diminishing their agency and involvement in the democratic process.

I declare under penalty of perjury that the foregoing is true and correct.

Signed in Katy, Texas this 22nd day of August, 2024.

                                                        Cameron Samuels